**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TERANCE MCNINCH and
PEGGY MCNINCH,

Plaintiffs,

v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

Defendant.

Case No. 19-cv-02305

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiffs Terance McNinch and Peggy McNinch ("Plaintiffs") filed this action against Defendant The Guardian Life Insurance Company ("Defendant") under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs seek recovery of accidental death insurance benefits under an employee welfare benefit plan provided to their son, decedent Jason McNinch ("Jason"), as an employee of the Chicago Museum of Contemporary Art. Before the Court is Plaintiffs' motion to exclude Defendant's expert, Dr. Daniel J. Martin, Ph.D., ABPP ("Dr. Martin"). (Dkt. 52). For reasons stated herein, Plaintiffs' Motion to Exclude [52, 53] is denied.

### I.  Background

On October 31, 2017, Chicago Police conducted a well-being check and found 44-year-old Jason McNinch unresponsive at his residence. (Dkt. 53). He was pronounced dead later that day. *Id.* The Cook County Medical Examiner determined the cause of

1

death to be combined drug (cocaine and fentanyl) toxicity. *Id.* Defendant denied the parents' claim based on the life insurance plan's policy exclusion for losses caused by the "voluntary use of a controlled substance." (Dkt. 53 at 5; Dkt. 61 at 2). Plaintiffs filed this action against Defendant to recover accidental death benefits.

Defendant has offered a report authored by Dr. Martin on July 1, 2020 (Dkt. 53-1 (Exh. A)) and supplemented on October 8, 2020 (Dkt. 61-1 (Exh. A)).[1] Defendant argues that Dr. Martin's expert opinion will help the Court determine whether the loss was caused by Jason's "voluntary use of a controlled substance." (Dkt. 61 at 3).

In his report, Dr. Martin provided a summary of his qualifications and also attached his CV. (Dkt. 53-1). He is a board-certified psychologist with a Ph.D. in Clinical Psychology, licensed in three states. Dr. Martin has worked in the substance use disorder field for more than 25 years. He also completed a Predoctoral and a Postdoctoral Fellowship at the Yale University School of Medicine focusing on psychotherapy and assessment with adolescents and adults. He conducted clinical trials investigating substance use disorders at Yale. Dr. Martin has published research articles on the treatment of substance use disorders in scientific journals and has been involved in conducting clinical trials and treating patients.

Dr. Martin offered the following opinions in his report: (1) Jason likely met the DSM-5 diagnoses of Opioid Use Disorder, Alcohol Use Disorder, and Stimulant Use

---

[1] As Plaintiffs point out, the Supplemental Report was due July 3, 2020 but was submitted on October 9, 2020 with Defendant's Response. This 3-month delay did not prejudice Plaintiffs, however. The Supplemental Report contains no new opinions. It added to Dr. Martin's description of his methodology, but this was not a substantial change. Plaintiffs also had the opportunity to respond to the Supplemental Report in their Reply brief.

Disorder (cocaine) for which he underwent intermittent treatment and experienced relapses; (2) Jason had a history of nasal heroin and cocaine use—possibly using the substances simultaneously and possibly using them separately; (3) the substances in Jason's system at the time of his death are consistent with a substance use disorder; (4) Jason's methadone treatment was likely coupled with psychoeducation and counseling that would have informed him of the risks of substance use including death; (5) cocaine is usually cut or combined with other substances, including fentanyl; (6) it is likely that Jason was aware that he was self-administering the controlled substances and that a doctor did not prescribe them; and (7) it is more likely than not that Jason was aware that cocaine is often mixed with other substances based on his substance use history and treatment. (Dkt. 61-1).

Plaintiffs have moved to exclude Dr. Martin's opinions as not satisfying the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). They challenge the reliability and relevance of Dr. Martin's report, but not his qualifications.

## II. Standard

Under *Daubert*, 509 U.S. 579, the requirements of Federal Rule of Evidence 702 must be met before an expert can testify. The court evaluates the expert's qualifications, reliability of the methodology, and relevance of the testimony: "In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically

reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citations and quotations omitted). District courts have "significant discretion under the flexible *Daubert* inquiry." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 818 (7th Cir. 2012). The burden is on the party seeking to admit the expert to show by a preponderance of the evidence that the expert meets the requirements of Rule 702 and *Daubert. Gopalratnam*, 877 F.3d at 782.[2]

Because "there are many different kinds of experts, and many different kinds of expertise, . . .the gatekeeping inquiry must be 'tied to the facts' of a particular case." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150, 119 S. Ct. 1167, 1175 (1999) (quoting *Daubert*, 509 U.S. at 591). With regard to reliability, "the key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion." *C.W. v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) (internal citations and quotations omitted). While the *Daubert* inquiry focuses on principles and methodology, the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

---

[2] Under Rule 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

### III.    Analysis

#### A. Preliminary Matter

The Court initially addresses Defendant's request to delay ruling on the present motion. Defendant points out that the parties agreed that this ERISA dispute will be adjudicated by Rule 52 cross-motions and therefore requests that the Court delay ruling so that the parties can address arguments about Dr. Martin's opinions in the context of those motions and other evidence in the case. (Dkt. 61).[3] Plaintiffs counter that the Court can decide the motion under *Daubert* now, which will also permit the parties to argue their dispositive motions based on a clearly defined record. (Dkt. 64).

The Court denies Defendant's request. The Court can decide the admissibility of Dr. Martin's report now and in the Rule 52 motions the parties will be able to present arguments about the weight to be afforded his opinions. The Court will be able to assess and weigh Dr. Martin's opinions along with the other evidence in the case.

#### B. Reliability

Plaintiffs argue that Dr. Martin's opinions are not reliable because Dr. Martin reviewed only minimal records and did not apply any scientific method or process. Defendant counters that Dr. Martin's observation that there are "minimal medical records in the file" does not undermine the reliability of his report and that his methodology was sound. (Dkt. 61).

---

[3] The procedure in deciding an ERISA case under Rule 52 is "more akin to a bench trial than to a summary judgment ruling." *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). *See also Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003) (in ERISA action discussing proceeding by means of a trial on the papers under Rule 52(a)).

An expert's opinion must be based on sufficient facts or data to be admissible under Rule 702. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). "Rule 702's reliability element also requires the district judge to determine that the expert considered sufficient data to employ the methodology." *Second Amend. Arms v. City of Chicago*, 2020 WL 1157347, at \*11 (N.D. Ill. Mar. 10, 2020). Dr. Martin's opinions are based on Jason's Postmortem Examination, the Toxicology Report, the Medical Examiner's Report, the Chicago Police Department's Incident Report, and five years of Jason's medical records. Dr. Martin examined these records and came to his conclusions based on his medical training and 25 years of experience in the substance use disorder field.

Plaintiffs rely on *Second Amendment Arms,* in which the court held that the expert did not rely on sufficient facts and data in opining about profitability of a firearms retailer's stores. 2020 WL 1157347 at \*11. However in that case the expert admitted that his opinions were not based on "*any* data or method" and were in fact based on a *lack* of data. *Id.* That is not the case here. Dr. Martin, in responding to the first question about Jason's history based on his medical records, merely noted that there were "minimal medical records in the file" but that based on the existing medical records, Dr. Martin concluded that Jason likely met the DSM-5 diagnoses of Opioid Use Disorder, Alcohol Use Disorder, and Stimulant Use Disorder (cocaine). Dr. Martin then explain in more detail his specific findings based on specific records. (Dkt. 61-1).

Plaintiffs next argue that Dr. Martin offered no methodology to support his conclusions. The Court disagrees. Considering the nature of this case, Dr. Martin's credentials and experience, the documents he reviewed, and his explanation of how he arrived at his conclusions based on his clinical training and experience, the Court finds his opinions to be reliable.

An expert opinion founded on "subjective belief or unsupported speculation" is not admissible. *Daubert,* 509 U.S. at 590. However "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience. Accordingly, we consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.,* 493 F.3d 782, 787–88 (7th Cir. 2007) (cleaned up). *See also Kumho,* 526 U.S. at 141 ("[T]he test of reliability is flexible, and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case."). For example in *Wilda v. JLG Indus.*, a design defect case, the court held that the expert's review of the case information in conjunction with his undisputed industry expertise was reliable methodology. 2021 WL 392705 (N.D. Ill. Feb. 3, 2021). *See also Trustees of Chicago Painters*, 493 F.3d at 788 (expert testimony based on specialized knowledge as opposed to subjective belief or speculation was reliable).

Plaintiffs broadly argue that Dr. Martin's testimony is speculative but do not actually point to any portion of his report that is speculative. They also rely on *Porter*

7

*v. Whitehall Laboratories, Inc.,* 9 F.3d 607 (7th Cir. 1993) for support (Dkt. 53, p. 9), however, in that case the Seventh Circuit "acknowledge[d] that there may be a situation in which personal experiments or observations meet the requirements of *Daubert.*" 9 F.3d at 614 n. 6. And *Porter* is distinguishable because the expert there only had limited experience and did not rely on any cases that were similar to the case at issue. *Id. Cf. Englehard v. Wyeth Consumer Healthcare, Ltd*, 2014 WL 1227638, at *3 (N.D. Ill. Mar. 25, 2014) (distinguishing *Porter* because medical expert in *Porter* had not seen similar cases).

In this case, Dr. Martin's substantial experience and scientific knowledge is expansive and his report is supported by a number of scientific citations and publications. His decades of experience treating and studying substance use disorders gives him the specific knowledge to diagnose a substance use disorder from a patient's medical records and opine on patterns and behaviors consistent with such a disorder. Thus, Dr. Martin's opinion is professionally sound and reliable based on his decades of scientific and specialized study, training, research, and experience relevant to this case.

### C. Relevance

Plaintiffs argue that Dr. Martin's opinions do not assist the trier of fact because they are grounded solely in common sense instead of scientific analysis. Defendant counters that Dr. Martin's expertise will help the factfinder understand and appreciate the significance of the information in the record.

The relevance inquiry asks "whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam*, 877 F.3d at 779. An expert must not give opinions grounded solely in common sense, *Dhillon v. Crowns Controls Corporation*, 269 F.3d 865, 871 (7th Cir. 2001), or solely a "bottom line" conclusion, *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008). Dr. Martin has not done either here.

Applying his relevant knowledge and experience, Dr. Martin assessed Jason's substance use disorders based on DSM-5's diagnostic standards. He also gave opinions such as about the frequency with which cocaine is "cut or combined with other substances […] including fentanyl." (Dkt. 61-1). The information provided in Dr. Martin's opinions and explanations are helpful to the Court; they are not common knowledge to the average layperson. In *Dhillon*, 269 F.3d 865, it was common sense that a door would keep a machine operator's leg from exiting an opening. Plaintiffs do not explain how *Dhillon* is similar to this case, which involves medical assessment and application of specialized knowledge about substance use and particular substances by a board-certified psychologist with training in the relevant area.

Finally, Plaintiffs argue that Dr. Martin's testimony "invades the province of the finder of fact in that it amounts to no more than a thinly veiled attempt to state a conclusion and create evidence as to the key legal question" in this case. (Dkt. 53 at 2). Defendant responds that the expertise relates to issues of fact that will assist the factfinder, and that Dr. Martin offered no legal conclusion.

"[E]xpert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). In *Good Shepherd*, for example, the expert opined that the City's actions violated the Fair Housing Amendments Act, and the Seventh Circuit upheld the district court's exclusion of that testimony. *Id.* Here, none of Dr. Martin's opinions are outcome-determinative legal conclusions. The factfinder—this Court—will decide the legal question of whether, based on all of the facts in the case, the record shows that the policy exclusion for "voluntary use of a controlled substance" applies.

## IV.    Conclusion

For the stated reasons, Plaintiffs' Motion to Exclude [52] is denied.

E N T E R:

Dated: March 18, 2021

MARY M. ROWLAND
United States District Judge